ELLSWORTH, ADMINISTRATOR, *v.* CORNES.

4-6754                                               165 S. W. 2d 57

Opinion delivered October 12, 1942.

O. H. Sumpter, C. T. Cotham, Stanley D. Campbell, U. A. Gentry, House, Moses & Holmes and S. Hubert Mayes, for appellant.

Martin, Wootton & Martin, Cooper B. Land and Moore, Burrow & Chowning, for appellee.

McHANEY, J. Appellant, E. C. Ellsworth, was the administrator in succession of the estate of Frank Eveland who died intestate in Garland county, Arkansas, February 2, 1936, leaving no widow and no direct heirs, his wife having predeceased him. Shortly after Eveland's death, one Davis, a former county judge of Garland county, was appointed and qualified as the first administrator and made and filed an inventory of said estate. A short while thereafter he died and his widow, May Davis, was appointed, qualified and served for a short time and resigned, and appellant, Ellsworth, became her successor. Appellant, Maryland Casualty Company, became the surety on Ellsworth's bond as such administrator. Appellant, Frances M. Varney, is a stepdaughter of said intestate and is claiming the real and personal property of said estate, here involved, as a gift from her stepfather. Other appellants are C. T. Cotham and O. H. Sumpter of Hot Springs, reputable members of the bar of this court of long standing, and Stanley D. Campbell, a member of the bar of Tulsa, Oklahoma, and we presume he is a reputable member thereof.

Appellees are all the collateral heirs of Frank Eveland. They brought this action against appellants in the

chancery court to surcharge and falsify the accounts of Ellsworth as administrator in the handling of said estate, and to recover a judgment against him and the surety company for the funds misappropriated, to cancel an alleged void order of the Garland probate court, to cancel a certain deed from said Eveland to Frances M. Varney purporting to convey certain real estate to her and to cancel certain deeds made and executed by her to her attorneys, totaling a one-half interest in the same real estate covered by the deed from Eveland to her, and a deed from Sumpter to Ellsworth, administrator, covering a portion of the part conveyed to him. Judgment was also sought against all the parties, including attorneys, for moneys of the estate wrongfully had and received by them. The prayer of the amendment to the complaint is: ''Therefore, plaintiffs pray that they have judgment against the said E. C. Ellsworth, administrator of the estate of Frank W. Eveland, deceased, and the Maryland Casualty Company, a corporation, in the sum of $12,909.10, together with interest thereon from July 13, 1938, at the rate of six per cent. per annum until paid; that the defendants, O. H. Sumpter, C. T. Cotham, Frances M. Varney and Stanley Campbell, be required to account for the funds and property illegally paid to and received by them from said estate, and that the deed of Frances M. Varney and the deeds to all persons claiming interest in said real property through her, be canceled and held for naught, and for costs and all other proper relief.''

The complaint and the amendment made certain allegations of misconduct on the part of all the individual appellants which we do not consider material to the decisive point or points on which this opinion is based and we do not, therefore, set them out. The complaint did allege that Ellsworth, as administrator, did receive personal property of said estate of the value of $15,733.08 and that the lawful expenses of administration and the payment by him of lawful and valid debts was the sum of $2,823.98, leaving a net balance of $12,909.10, which should have been distributed by him to appellees, as the heirs at law of said intestate, according to the law of

descent and distribution of this state; that he had failed and refused to do so, and that they should have judgment against him and the surety company on his official bond therefor, with interest from July 13, 1938, at six per cent. per annum; and that his settlement theretofore made be surcharged in said amount for the use and benefit of appellees. It was also alleged that the administrator had paid to Sumpter $600 and to himself $492 without any order of the probate court authorizing him so to do, and that each of them should be required to account therefor. Also that the administrator had paid and delivered to Cotham, Varney and Campbell money, stocks and securities of the total value of $11,901.10, without lawful authority, and that each of them was indebted to appellees in said sum. As to the real estate, it was alleged that the deed purporting to convey same to Varney was never signed and acknowledged by Eveland, was never legally delivered to her, and that she acquired no title thereto; that *mesne* conveyances of said real estate were made by Varney, and that Cotham, Campbell, Sumpter and Ellsworth, individually are now the record owners of a one-half interest therein; and that said conveyances by her are void as against appellees who are entitled to have all said deeds canceled. It is also alleged that they acted promptly upon discovery of the actions of appellants which was a short time before the bringing of this suit.

Separate answers were filed consisting largely of general denials. Trial resulted in a decree for appellee. The court found it had full and complete jurisdiction of the action and all the parties; that appellees are all the heirs at law of Frank W. Eveland who died intestate at the place and date aforesaid, and, as such heirs, are entitled to all the estate of said Eveland involved in this action; that "the order or orders of the Garland probate court purporting to pass title or find title to the money or other property involved in this litigation or purporting to distribute the estate or any part thereof to Frances M. Varney, E. C. Ellsworth, Stanley D. Campbell, C. T. Cotham or O. H. Sumpter, were void, the probate court being without jurisdiction to enter

such orders and that the account of E. C. Ellsworth, as administrator—be surcharged in any amounts paid to the said E. C. Ellsworth, Frances M. Varney, Stanley D. Campbell, C. T. Cotham and O. H. Sumpter out of the estate of Frank W. Eveland under such order or orders or received by them from said estate, together with his bond.'' The court found all issues of law and fact in favor of appellees and against appellants, ''except the issue as to whether there was actual fraud on the part of the defendants (appellants) or either of them, upon which issue the court deems a specific finding unnecessary to its decree, likewise as to alleged forgery of deed,'' and that appellees are entitled to the relief prayed, including the cancellation of the alleged deed from Eveland to Varney and all subsequent deeds through her appearing in the chain of title to the real estate involved, and to an accounting as prayed in the complaint. Judgment was accordingly entered against Ellsworth and the Maryland Casualty Company for $13,367.11, which with interest amounted to $15,777.91 on July 15, 1941, to bear interest from said date at six per cent. per annum. Other judgments rendered were as follows:

| | | |
|---|---|---:|
| Against | Sumpter | $2,483.53 |
| " | Varney | 6,325.55 |
| " | Cotham | 1,983.53 |
| " | Campbell | 1,983.53 |

together with interest on these respective amounts at six per cent. per annum from July 13, 1938, until paid; and that the account of Ellsworth be surcharged with each of said sums. All deeds involving the title to the real estate in question were canceled by the decree, and the right of subrogation, if any, in favor of the surety was preserved. From this decree comes this appeal.

A brief summary of the facts follows: Frank Eveland suffered a cerebral hemorrhage in his home on February 2, 1936, from which he died the same day. His wife, the mother of appellant, Frances M. Varney, and her sister, Lula Pearl Parr, by a former marriage had predeceased him about four months. Mrs. Varney had lived in the home with them for about seven years and

had been supported by him as a member of the family. Shortly after Eveland's death Judge Davis was appointed administrator of his estate and went to the home to make an inventory of the property. No inventory was made of the household effects, but Mrs. Varney produced a black box containing bank pass books, certificates of deposit and other evidences of indebtedness due to Eveland, all personal assets of his estate. All household effects, except the radio were later sold by her and appropriated to her own use. The radio and Eveland's automobile were later taken by Ellsworth, he claiming on trial that he paid her for them, which she denied. She first refused to surrender the black box and its contents to Judge Davis, claiming that the estate was indebted to her for services rendered the intestate and was told she must file her claim and have it allowed. She also claimed Eveland had given her the black box and contents prior to his death, on an occasion when he was going to the hospital for a dangerous operation. Judge Davis insisted she must surrender the box, which she did when threatened with the police or a court order. The circumstances of the claimed oral gift were that Eveland was afflicted with a double hernia, and on November 4, 1935, (nearly 90 days before his death) he went to the hospital for an operation. A short time before leaving for the hospital, according to her testimony, he handed her a deed to the real estate here involved and the black box, and said: "If I never come back from the hospital, everything here belongs to you." She did not mention having the deed and did not produce it at that time, and did not place it of record until April 7, 1936.

Judge Davis, the then administrator, made inventory of the contents of the box and filed same. As stated above, Judge Davis died and his wife, May Davis, succeeded him, but in about 30 days she resigned and appellant, Ellsworth, succeeded her. Ellsworth prepared the deed and took the acknowledgment as notary. He employed appellant Sumpter as his official attorney without a previous court order authorizing him so to do. Appellant Varney had employed appellant Campbell of

Tulsa, Oklahoma, to prosecute her claim against said estate on a 50 per cent. contingent fee basis, his first written contract with her being dated February 13, 1936, at which time she did not inform him that she held a deed to the real estate. Prior to April 9, 1936, Campbell had associated appellant Cotham with him as her attorney and on that date they filed "exceptions to the inventory of assets" filed by May Davis, administratrix, on the ground that the personal property was hers by gift from Eveland. In this pleading prepared by Cotham, Mrs. Varney was referred to as the "daughter" of Eveland. They also filed exceptions to the account current of May Davis on May 20, 1936. Said exceptions were denied on the same date and no appeal was taken from this action of the court.

The deed to the real estate was taken by appellant Varney to appellant Cotham early in April, 1936, at the suggestion of Ellsworth. Cotham took the deed to persons in the bank, who should know Eveland's signature, to obtain their opinions as to the genuineness of the signature and comparisons were made of the signature on the deed with Eveland's known signature on checks at the bank. After learning of this deed Campbell and Cotham secured from appellant Varney a "supplemental agreement" in which she gave them and Sumpter a one-half interest in the real estate, as compensation for services "heretofore and hereafter to be performed" for her. Sumpter was later employed by the administrator, Ellsworth, as attorney for said estate, but without a court order, and was paid the sum of $1,983.53, by Cotham, as his part or share of the fees collected from Mrs. Varney.

On November 4, 1936, a "Petition for Partial Distribution" of the estate was filed by Mrs. Varney, in which no mention is made that she claimed to own the estate, previously asserted by her exceptions, and asked for a payment of $5,000. This petition recited that she "represents to the court that she is the sole and only legatee and beneficiary"of said estate, and "as such" is "entitled to all the estate of said deceased," etc.; and she prayed therein that Ellsworth be compelled to pay

her said money as "said sole legatee and beneficiary." Cotham, who prepared the petition, admits that the words "sole legatee and beneficiary" are "inept" to describe a stepdaughter of a decedent who left no will. A hearing was had on the petition on December 8, and on December 14 an order was made which recited the following: "It appearing that on the 8th day of December, 1936, all per-. sons interested in the estate of Frank Eveland, deceased, appeared in court, Frances M. Varney in person and by her attorneys, Stanley D. Campbell and C. T. Cotham, Esqs., Lula Pearl Parr, by her attorney, C. Floyd Huff, Jr., E. C. Ellsworth, administrator in succession of said estate, in person and by his attorney, O. H. Sumpter, Esq., and by consent of all the parties," etc. The court, after hearing Mrs. Varney and others, entered an order awarding her all the personal property of said estate against the administrator and a $5,000 distribution to her at that time.

Lula Pearl Parr, sister of Mrs. Varney, is mentioned in this order for the first time in the probate proceedings. She had questioned the genuineness of Eveland's signature on the deed and had written Mrs. Morgan, mother (now deceased) of two of the appellees, that her sister was making false claims against said estate and, with Ellsworth, was dissipating the estate. She and her attorney threatened to interfere with the proceedings on two grounds: that she had been "equitably" adopted by Eveland and that the probate court had no jurisdiction to determine the title to the property. A compromise settlement was reached and she was paid $3,000 out of the $5,000 distributed to Mrs. Varney under said order, for which Mrs. Parr gave a full release to her sister and a quitclaim deed to her interest in the real estate. Thus no one opposed. the claim of Mrs. Varney and no one questioned the court's jurisdiction to determine her rights to the property. Appellees, the heirs, had no notice of the proceeding. Thereafter the property was divided and the estate closed, the final order being made on July 13, 1938. Appellant Cotham told how the estate was divided—one-third of 50 per cent. to Campbell, and the remaining two-thirds of 50 per cent. to Sumpter and Cot-

ham equally. Of the real estate, Campbell got one-third of the one-half, and of the remaining two-thirds of one-half Sumpter got two-ninths and Cotham one-ninth. Sumpter thereafter conveyed to Ellsworth a one-ninth interest, being one-half of what was conveyed to him.

We think the court correctly held that the order or orders of the probate court purporting to adjudicate the title to said property or to distribute same, and especially the order of December 14, 1936, were void, because the probate court was wholly without jurisdiction. We think there was ample proof of legal if not actual fraud practiced on the probate court in the procurement of the order, and that the chancery court, in this action, had full jurisdiction both of the subject-matter and the parties. We are also of the opinion that, conceding the truth of appellant Varney's statements in evidence, as to the gift of the black box and the deed to her by Eveland, when he was about to leave for the hospital, were gifts upon condition, and the gifts failed when the condition failed. In other words, that the gift of the black box was a gift *causa mortis,* which was revoked by his return from the hospital, and that there can be no such thing as a gift *causa mortis* of real estate. *Gordon* v. *Clark,* 149 Ark. 173, 232 S. W. 19; *Johnson* v. *Colley,* 101 Va. 414, 44 S. E. 721, 99 Am. St. Rep. 884. He went to the hospital for an operation to correct a double hernia. Before leaving he handed her the box and deed, saying: "If I never come back from the hospital, everything here is yours." The undisputed fact is that he did come back from the hospital on November 18, 1935, returned to his home where he was confined a few days, but not in bed, and thereafter resumed his normal life, was up and about town, and did not die until February 2, 1936, and then from a wholly disassociated affliction from that that took him to the hospital. He discussed and treated the property as his own and the black box remained in the place he had always kept it before the alleged gift.

In Pomeroy's Equity, 4th Ed., p. 2669, the rule as to gifts *causa mortis* is stated as follows: "When a gift *causa mortis* is made during sickness, it is essential, in

order to perfect it and prevent a revocation, that the donor should *die of the very same sickness* from which he was then suffering, and there should be no intervening recovery between the illness and his final death; and it seems that the donee must affirmatively show the existence of all these facts.

We, therefore, conclude that the trial court was justified in finding and holding that no valid gift of the property was made to Mrs. Varney.

Aside from this phase of the case, we are convinced that the order of the probate court was void for want of jurisdiction to make it. Throughout its history, this court has held that probate courts are without jurisdiction to hear contests of and determine the title to property between personal representatives of deceased persons and third persons claiming title adversely to the estates of deceased persons. *Moss* v. *Sandefur,* 15 Ark. 381; *Mobley* v. *Andrews,* 55 Ark. 222, 17 S. W. 805; *Shane* v. *Dickson,* 111 Ark. 353, 163 S. W. 1140; *Fowler* v. *Frazier,* 116 Ark. 350, 172 S. W. 875; *Gordon* v. *Clark,* 149 Ark. 173, 232 S. W. 19; *Huff* v. *Hot Springs Savings, T. & G. Co.,* 185 Ark. 20, 45 S. W. 2d 508; *Sides* v. *Janes,* 188 Ark. 386, 66 S. W. 2d 617; *Ellis* v. *Shuffield,* 202 Ark. 723, 152 S. W. 2d 535. The personal property was in the hands of the administrator. Mrs. Varney was not an heir, distributee or beneficiary and was therefore a third person. She was a stranger to the blood and to the estate. Counsel for the Maryland Casualty Company contends that, because the assets constituting the subject-matter of the contest were in the hands of the administrator the probate court has jurisdiction to determine the title thereto, even though such claimant be a third party or stranger to the estate. In other words, if the property is in the possession of the administrator the probate court has jurisdiction to determine the title as between him and the stranger, but if the possession is in the stranger it does not. This contention is not sound, as shown by a reading of the cases cited above, in a number of which the possession was in the administrator. For example, in *Gordon* v. *Clark, supra,* Gordon sued in the chancery court to quiet title as against an administrator and

others and alleged that the administrator was holding as a part of the estate certain bonds and other personal property which, as alleged, the deceased in his lifetime had given to him. A plea was filed to the jurisdiction, was sustained, and the case dismissed on the ground that the probate court had jurisdiction. On appeal this court reversed, saying: ''The present case involves a contest between the administrator and a claimant to certain property of the estate, and it is well settled that the probate court has no jurisdiction of a contest between an executor or administrator and others over the title of property belonging to the deceased. *King* v. *Stevens,* 146 Ark. 443, 225 S. W. 656, and cases cited, and *Union & Merc. Trust Co.* v. *Hudson,* 147 Ark. 7, 227 S. W. 1.''

The general rule, supported by our own cases, is stated in Gary's Probate Law, 3d Ed., § 23, p. 20, relative to the power of the probate court to determine the title to contested property, and it is limited as to contestants ''to those interested in such property as equitably or legally entitled to some distributive share therein or in the residue, and to creditors who voluntarily and upon general notice and without special citation present their claims. All controversies between executors, administrators and guardians, or those interested in the particular estate, and other persons not interested in it, must be settled in another forum.'' *King* v. *Stevens,* 146 Ark. 443, 225 S. W. 656, and *Thomas* v. *Thomas,* 150 Ark. 43, 233 S. W. 808. These cases hold that where the contest is between the executor or administrator and parties who claim as heirs or beneficiaries having some interest in the estate, and who do not claim adversely or as strangers to it, the probate court has jurisdiction. Mrs. Varney did not go before the probate court as one interested in the estate as an heir or beneficiary, but as one claiming adversely to the estate as a third party or stranger, and the probate court was without jurisdiction to entertain the contest, and its order of December 14, 1936, was and is void and of no effect.

All appellants, except Mrs. Varney, entered pleas of laches in bar of the action. Laches is not mere delay,

but delay that works an injury to another. No injury or disadvantage or change in status is shown. Appellants still have the real estate. There are no innocent purchasers. They may have spent the money or other personal property wrongfully received by them, but if so that is no defense. Appellees were nonresidents, living in different parts of the United States, and acted promptly when advised, and we think the plea comes with poor grace and cannot be sustained.

The decree is accordingly affirmed.